## TANENBAUM v. JOSEPHI et al.

(Supreme Court, Appellate Division, First Department.   April 22, 1904.)

1. INSURANCE BROKERS—CONTRACT TO FURNISH INSURANCE—TERMINATION—CONSTRUCTION.

Insurance brokers contracted to furnish their clients all insurance required for three years from a certain date at a certain rate, provided that if, during the contract, any body of fire insurance companies similar to the combination at present existing, and termed the Tariff Association of New York, or any similar body under any other name, should reduce the rate of insurance, the clients should have the benefit thereof. *Held*, that the dissolution of the Tariff Association of New York did not terminate the contract.

2. JURY QUESTION—WHAT CONSTITUTES.

Where the testimony is conflicting on an issue of fact decisive of the rights of the parties, it should be submitted to the jury.

3. INSURANCE BROKERS—CONTRACT TO FURNISH INSURANCE—RESCISSION.

Insurance brokers contracted with clients to furnish all insurance required for a certain period at a certain rate, provided that, if the rate of insurance should be reduced by a certain tariff association, the clients would have the benefit thereof. During the life of the contract the association dissolved, and the companies composing it acted independently in fixing the rates, resulting in a lowering thereof. The clients informed the brokers that insurance was offered them at a much lower rate than specified in their contract, and, after some negotiation, divulged the name of one T., a broker, who offered insurance at such reduced rate. The brokers then told their clients that, if the latter would get T. to obtain the execution of an agreement and guaranty prepared by the brokers, the clients might give T. their insurance. The clients mailed a contract and guaranty to T., with a letter, dictated in the brokers' presence, in which the promise to place insurance with him was modified to read. "We will take the matter into serious consideration." T. returned the contract and guaranty duly executed, and the brokers were informed of that fact. *Held*, that the original contract of the brokers to furnish insurance was rescinded.

Ingraham, J., dissenting.

Appeal from Trial Term, New York County.

Action by Moses Tanenbaum against Isaiah Josephi and others, composing the firm of Albert Benjamin & Co.   From a judgment for plaintiff, and a denial of a new trial, defendants appeal.   Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

John Frankenheimer, for appellants.
Ernest Hall, for respondent.

LAUGHLIN, J.   The plaintiff's assignors were general fire insurance brokers, and he was a member of the firm.   The defendants were merchants engaged in business in the city of New York, and desired in-

surance upon their merchandise and fixtures.  On the 24th day of December, 1896, plaintiff's assignors and the defendants made an agreement in writing by which the former were to procure all insurance required by the defendants for three years from the 1st day of February, 1897, at the rate of 83 cents per $100 in valuation.  The action is brought to recover damages for a breach of this contract.  The rate specified in the contract was 7 cents per hundred lower than the rate fixed by the Tariff Association.  The Tariff Association was an association composed of about 70 per cent. or more of the fire insurance companies doing business in the city of New York.  The association fixed uniform rates, and from time to time changed the same.  The contract provided that if, during the term of the contract, the rate should be reduced by the association, the defendants should have the benefit of the reduction, but, if the rate should be increased, the brokers were obligated to furnish the insurance without any increase in their charges therefor.  On the 28th day of April, 1898, the Tariff Association dissolved, and thereupon each insurance company, in fixing and offering rates, acted independently.  The result was a decided lowering in the rates.  Down to this time the brokers had procured the insurance required by the defendants pursuant to the contract.  Early in May, 1898, the defendants informed the plaintiff that insurance was offered to them by other agents at a much lower rate than that specified in the contract.  The defendants gave evidence tending to show that the brokers then, instead of standing upon their rights under the contract, or asserting that defendants were not entitled to the benefit of the reduction in rates, manifested a willingness to furnish the insurance at 50 cents per hundred; that defendants had been offered insurance as low as 20 cents a hundred, and they informed plaintiff that they thought the insurance should be furnished for 30 or 40 cents a hundred; that plaintiff, representing his firm, was unwilling to accede to this suggestion, and insisted that no brokers could furnish the insurance as low as 20 cents per hundred; that defendants then divulged the name of one Tynberg as the broker who offered them insurance at that rate; that plaintiff therefore informed one of the defendants that, if they could get Tynberg to obtain the execution of an agreement and guaranty prepared by the plaintiff, then the defendants might give Tynberg their insurance; that prior to this time the plaintiff had prepared a contract and guaranty with a view to having defendants submit them to another broker, who had tendered insurance at a low rate, and he delivered this contract and guaranty to the defendants; that the defendants inclosed the same with a letter to Tynberg; that this letter was dictated in the presence of the plaintiff, and, as first dictated, was to the effect that, if Tynberg would sign the contract and obtain the guaranty, they would place their insurance with him; that, at the plaintiff's suggestion, the part relating to placing insurance with him was altered to read, "we will take the matter into serious consideration;" that plaintiff also suggested that both parties should sign a waiver of cancellation clause, but that defendant would not agree to this, as he never asked or knew of an insurance broker to do this, and the plaintiff acquiesced in this view; that Tynberg returned a typewritten copy of the contract to the defendants, executed by himself and guarantied

as suggested; that thereupon one of the defendants telephoned the plaintiff, informing him of this fact, and stating that they would give their insurance to Tynberg; that the plaintiff then, for the first time, claimed that this was all for his benefit, and that the contract should be given for his account; and that to this the defendants did not accede, and subsequently placed the insurance with Tynberg. After the conversation over the telephone, and before the insurance was actually placed with Tynberg, the plaintiff wrote the defendants, asserting that the proposition to Tynberg was made merely to convince the defendants that Tynberg's offer was not made in good faith, and requesting that no insurance be given to Tynberg or any other firm without consulting him, and claiming that, if any orders were to be given to Tynberg, they should be for the account of the plaintiff's assignors; and submitting new propositions for a reduction of the rate by his assignors to 40 and 50 cents, respectively. At the close of the evidence the court directed a verdict for plaintiff for the difference between the contract price of 83 cents per hundred and the rate at which the insurance was placed with Tynberg upon all insurance so placed for the balance of the contract period. Defendants excepted to the direction of a verdict, and requested to go to the jury upon all questions of fact, and also excepted to the denial of this request.

The appellants contend that the dissolution of the Tariff Association dissolved the contract, but this claim is not tenable. They obligated themselves to place all the insurance they required through the plaintiff's assignors, and to pay therefor at the rate of 83 cents per hundred. The only contingency in which the rate was to be different was the reduction of the rate by "any body of fire insurance companies (similar to a combination at present in existence termed the Tariff Association of New York) or any similar body under any other name." That event has not transpired. Therefore the defendants were obligated to take the insurance and pay therefor the maximum rate, and plaintiff's assignors could, if they had so elected, have held the defendants to their contract.

The testimony of the plaintiff controverts that offered by the defendants, to the effect that, if Tynberg would execute the agreement and obtain the guaranty, they were at liberty to place their insurance with him. That question of fact should have been submitted to the jury, if its determination would have been decisive of the rights of the parties. Assuming the evidence introduced on the part of the defendants to be true, as must be assumed in view of the refusal to submit the questions of fact to the jury, we think the contract was rescinded, and the plaintiff was not entitled to recover. The rescission was by mutual consent. The consideration was the release of each party from his liability under the contract, and there was the further consideration that the defendants were induced to, and did, write a letter to, and have communications and negotiations with, Tynberg, for placing the insurance. The plaintiff's assignors were not at liberty, after making this proposition to the defendants, and after it was acted upon by the latter, and all the conditions upon which the rescission of the contract was to take effect were complete, to withdraw the proposition, even though the defendants had not then placed any of the insurance with Tynberg, or legally obligate

themselves so to do. They at least obligated themselves to consider seriously Tynberg's offer, and they, as business men, could not honorably ask Tynberg to execute the contract and procure the guaranty on the representation that they would consider his offer, if they were not at liberty to consider it at all in their own behalf.

It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event.

VAN BRUNT, P. J., and PATTERSON and McLAUGHLIN, JJ., concur. INGRAHAM, J., dissents.